IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TIMOTHY JOHNSON,

              Petitioner,

vs.                                             No. CIV 06-593 JH/LFG

JAMES JANECKA, Warden,

              Respondent.

## MAGISTRATE JUDGE'S FINDINGS
## AND RECOMMENDED DISPOSITION[1]

### Findings

1. This is a proceeding on a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, filed July 3, 2006. Petitioner Timothy Johnson ("Johnson") challenges the judgment and sentence entered by the Eighth Judicial District Court in State v. Johnson, No. 02-55 CR (County of Colfax). Johnson was convicted on a jury verdict of murder in the first degree (felony murder), and tampering with evidence. A Judgment, Sentence and Commitment was entered on December 6, 2002. On the murder conviction, Johnson was sentenced to life imprisonment with eligibility for parole after thirty years; on the conviction for tampering with evidence, he received a sentence of eighteen months. The sentences were run consecutively.

2. The New Mexico Supreme Court affirmed Johnson's conviction on November 4, 2005.

---

[1] Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

He thereafter filed a petition for writ of habeas corpus in state district court.  The petition was denied, and Johnson applied to the New Mexico Supreme Court for certiorari, which was also denied.  The state habeas proceeding followed an odd procedural route, but eventually all steps were completed -- filing of the habeas petition in district court, followed by denial; petition for certiorari with supreme court, followed by denial.  The Court finds that Johnson exhausted his state habeas remedy.[2]

3.  Johnson raises the following issues in his federal habeas petition:

Claim One:  Ineffective assistance of counsel in that trial counsel (1) failed to investigate and request a jury instruction on the intoxication defense; (2) failed to request a jury instruction on lesser included offenses; and (3) failed to investigate the prosecution's case.

Claim Two:  First degree criminal sexual penetration is an insufficient predicate for felony murder.

4.  Respondent filed his Answer [Doc. 18], along with a Motion to Dismiss Petition with Prejudice [Doc. 16] and accompanying memorandum.  Johnson filed a "Traverse" (Response) [Doc. 21] to the Motion.  Respondent did not file a Reply and the time for doing so has expired.  The Motion to Dismiss is now fully briefed.  For the reasons given below, the Court recommends that the motion be granted and the case be dismissed with prejudice.

---

[2]Johnson was proceeding *pro se*.  On May 18, 2005, his habeas petition was filed erroneously as Colfax County civil cause No. 05-105-CV, rather than as part of the criminal proceedings [Doc. 18, Ex. L].  There was a delay in ruling on the petition, perhaps because of the erroneous filing.  Therefore, on January 19, 2006, Johnson filed a document entitled "Petition for Writ of Certiorari" [Doc. 18, Ex. M] in the district court, which raised the same issues as were raised in the initial petition.  On April 6, 2006, the state district court denied Johnson's habeas petition.  [Doc. 18, Ex. N].  He thereafter sought certiorari review in the state supreme court [Doc. 18, Ex. O].  Certiorari was denied on May 10, 2006.  [Doc. 18, Ex. P].

<u>Claim One:  Ineffective Assistance of Counsel</u>

5.  To establish ineffective assistance of counsel, Johnson must make a two-pronged showing: (1) that counsel's performance was constitutionally defective; and (2) that the deficient performance prejudiced the defense in that counsel's errors were so serious as to deprive the defendant of a fair trial with a reliable result.  <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984).

6.  To prove deficient performance, Johnson must overcome the presumption that counsel's conduct was constitutionally effective.  <u>Duvall v. Reynolds</u>, 139 F.3d 768, 777 (10th Cir. 1998). Scrutiny of counsel's performance must be highly deferential and must avoid the distorting effects of hindsight.  <u>Miles v. Dorsey</u>, 61 F.3d 1459, 1474 (10th Cir. 1995). In order to be found constitutionally ineffective, trial counsel's performance must have been completely unreasonable, not merely wrong, so that it bears no relationship to a possible defense strategy.  <u>Hoxsie v. Kerby</u>, 108 F. 3d 1239, 1246 (10th Cir. 1997).

7.  Respondent argues that Johnson's claims of ineffective assistance of counsel were raised in state court and decided adversely to Johnson.  A federal court is precluded from granting habeas relief on any claim adjudicated on the merits by the state courts, unless the state proceeding resulted in a decision that is contrary to or involves unreasonable application of clearly established federal law, or unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d); <u>Williams v. Taylor</u>, 529 U.S. 362, 406, 413, 120 S. Ct. 1495 (2000); <u>Smallwood v. Gibson</u>, 191 F.3d 1257, 1264-65 (10th Cir. 1999).

8.  The Court finds that each of the three instances of ineffectiveness alleged by Johnson was indeed raised and rejected by the state courts, and that the decisions were reasonable under the test

of Williams v. Taylor.  Federal habeas relief is therefore unavailable to Johnson on these claims.

*Failure to request a jury instruction on the defense of intoxication.*

9.  This claim was raised in Johnson's direct appeal.  The New Mexico Supreme Court rejected the claim that Johnson's trial counsel was ineffective in failing to request that the jury be instructed on the defense of intoxication, on two grounds:  (1) under New Mexico law, intoxication is not a defense to felony murder; and (2) an intoxication instruction would have been contrary to the defense strategy, as "the core of Defendant's closing argument was that he had not committed an act, rather than that he acted without the necessary *mens rea*."  [Doc. 18, Ex. H, at 10].

10.  Johnson also raised this issue in his state habeas petition [Doc. 18, Ex. L, at 2-3] and in his petition for certiorari following denial of the habeas petition [Doc. 18, Ex. O, at 3].  He argued that "a reasonably competent attorney would have requested that an intoxication instruction be given, since felony murder requires specific intent that could have been absent due to diminished capacity if the jury found that Mr. Johnson was was drunk when the acts happened."  As noted above, the habeas petition was denied by the district court and certiorari was denied by the state supreme court.

11.  The Court finds nothing unreasonable in the rulings of the New Mexico courts.  The law is clear in New Mexico that intoxication is not a defense to a charge of felony murder.  New Mexico did not abandon the *mens rea* requirement for murder in adopting felony murder, State v. Ortega, 112 N.M. 554, 563, 817 P.2d 1196, 1205 (1991); rather, its felony murder rule serves only to raise second-degree murder to first-degree murder when the murder is committed in the course of a dangerous felony.  State v. Campos, 122 N.M. 148, 154, 921 P.2d 1266, 1272 (1996).  "[T]he purpose of the felony-murder rule in New Mexico is to elevate second-degree murder to first-degree murder 'when it occurs in circumstances that the legislature has determined are so serious as to merit

4

increased punishment.'" Id..

12.  In order for the felony murder doctrine to apply, the State must prove that the defendant acted with the *mens rea* for at least second-degree murder – that is, the defendant intended to kill, or the defendant knew that his actions created a strong probability of death or great bodily harm, or the defendant acted in a manner greatly dangerous to the lives of others.  Id., 122 N.M. at 157.  The New Mexico Supreme Court has consistently held that intoxication is not a defense to second-degree murder, because it applies only to specific-intent crimes, whereas second-degree murder is a general-intent crime.  Id..

13.  State v. Campos, *supra*, was a case factually similar to Johnson's, in which the victim died as a result of a violently forceful criminal sexual penetration with an object.  The defendant in that case was charged with felony murder, the predicate offense being criminal sexual penetration, and he argued that his intoxication should have served as a defense to the felony murder charge.  The New Mexico Supreme Court rejected the argument, "holding that second-degree murder is a general-intent crime for which intoxication is not a defense . . . [and, in addition] a clear majority of jurisdictions do not allow intoxication to defeat a charge of second-degree murder."  Id., 122 N.M. at 160, 161.

14.  Thus, if Johnson's attorney had requested an intoxication instruction, it would have been rejected.  It does not constitute ineffective assistance of counsel to fail to make a meritless or futile argument,  United States v. Cook, 45 F. 3d 388, 392-93 (10th Cir. 1995), and the state courts did not act unreasonably in rejecting Johnson's charge of ineffectiveness on this basis.

15.  Johnson argues in his federal habeas petition that sufficient evidence was presented at trial that he and the persons accompanying him on the night of the incident, including the victim, were

5

drinking.  He contends that counsel was ineffective in failing to investigate and develop this evidence prior to trial and in failing to raise intoxication as a defense.  [Doc. 1, at 5-8].  But the issue is not whether there was evidence to support the claim that he was intoxicated, but whether his attorney performed inadequately in failing to raise the defense.   As discussed above, the defense is simply unavailable to the crime Johnson was accused of committing.

16.  In addition, it was not unreasonable for the state supreme court to rely on the fact that a competent trial attorney representing Johnson in this case would not have requested an instruction which would undermine his entire defense strategy.  That strategy was to argue that Johnson did not commit the act of violent penetration at all; it would have been inconsistent, confusing, and detrimental to his defense to argue at the same time that Johnson was intoxicated when he committed the act.  Intoxication is raised as a defense to negate a required element of specific intent, State v. Brown, 122 N.M. 724, 729, 931 P.2d 69, 74 (1996), not to prove that the defendant did not commit the underlying act.

17.  The Court finds that the rulings by the state courts as to the intoxication defense were neither contrary to nor involved an unreasonable application of clearly established federal law, nor were they based on an unreasonable determination of the facts in light of the evidence presented.  The Court therefore concludes that federal habeas relief should be denied with respect to this claim.

## *Failure to request a jury instruction on lesser included offenses*

18.  This claim was raised in Johnson's appeal, as well as in his habeas petition.  In affirming the conviction on direct appeal, the New Mexico Supreme Court noted that, as was true with the intoxication defense, a request by counsel for instructions on lesser included offenses would have undermined Johnson's defense strategy.  The supreme court held:

> Defendant argues that his attorney was ineffective because she did not request instructions on second degree murder, involuntary manslaughter, and CSP [criminal sexual penetration].   But these instructions would have been contrary to Defendant's trial strategy, and there was no evidentiary basis for these instructions.   Defendant's argument at closing was that he did not insert a foreign object into Dowty's vagina, and that he did not know how her injuries occurred. In his statements to the police, he repeatedly denied knowing how Dowty sustained her injury.   Thus, Defendant argued that he did not commit an unlawful act, or an act which caused Dowty's death . . . .
>     Second degree murder and involuntary manslaughter each require an unlawful act which results in death . . .   CSP also requires an unlawful act . . . .   Thus, an instruction for any of these three crimes would have been inconsistent with Defendant's trial strategy . . . . Because the instructions were contrary to Defendant's trial strategy, and there was no evidentiary basis for them, Defendant's trial counsel was not ineffective for failing to request them.

[Doc. 18, Ex. H, at 9-10].

19.   This Court finds nothing unreasonable in the state court's ruling.   Counsel cannot be faulted for failing to raise an issue that would have undermined the defense strategy.   The decision to follow this strategy was not unreasonable, in light of Johnson's repeated statements to the police that he did not know how the victim sustained her injuries.   While Johnson might now wish in hindsight that his attorney had used a different strategy, counsel made a reasonable decision to pursue a strategy consistent with Johnson's prior statements.   In addition, hindsight is not properly applied in determining questions of ineffective assistance of trial counsel.   Miles v. Dorsey, *supra*.   The performance of Johnson's trial counsel cannot be said to have been "completely unreasonable, not merely wrong, so that it bears no relationship to a possible defense strategy."   Hoxsie v. Kerby, *supra*, at 1246.

20.   Johnson raised the issue again in his state habeas petition [Doc. 18, Ex. L, at 2-3], and in his petition for certiorari to the state supreme court.   [Doc. 18, Ex. O, at 3].   Both petitions were

denied by the state courts.

21.  The Court finds that the rulings by the state courts were neither contrary to nor involved an unreasonable application of clearly established federal law, nor were they based on an unreasonable determination of the facts in light of the evidence presented.  The Court concludes that federal habeas relief should be denied with respect to this claim.

*Failure to investigate prosecution's case*

22.  Johnson's final allegation of error by trial counsel is that his attorney failed "to investigate properly into prosecution's case." [Doc. 1, at 10].  This claim, as stated in his federal habeas petition, is somewhat diffuse.  However, it appears that he faults his counsel for failing to investigate, based on the following factual assertions:

23.  Police officer William Patterson stated under oath, in an Affidavit in support of a search warrant to obtain DNA evidence from Johnson, that the autopsy revealed semen in the victim's vagina.  Johnson asserts that the DNA evidence obtained from him pursuant to the warrant later "proved negative against the semen found in the vagina of the victim.  Thus the DNA comparison showed that applicant didn't have intercourse with the victim." [Doc. 1, at 12-13].  In his federal petition, Johnson denies that he ever told investigating authorities that he had consensual sex with the victim, and he faults his attorney for not pursuing this contention, arguing that "the DNA testing would have exonerated him." [Doc. 1, at 13].

24.  Thus, it appears that Johnson faults his attorney for failing to introduce the results of the DNA testing, and for counsel's handling of the Patterson testimony.  These claims were raised and decided in the state courts.

25.  In the brief in chief on Johnson's direct appeal, appellate counsel raised a number of

8

claims with respect to ineffective assistance of counsel, pursuant to State v. Franklin, 78 N.M. 127,

129, 428 P.2d 982 (1967), and State v. Boyer, 103 N.M. 655, 658-60, 712 P.2d 1 (Ct. App. 1985).[3]

One of these contentions was that counsel should have introduced into evidence the fact that the

victim had tissue and blood under her fingernails and semen in her vagina, and should have introduced

the testimony by police Sergeant Patterson before the grand jury.  [Doc. 18, Ex. E, at 21].

        26.  Other instances of alleged ineffectiveness raised in the brief under Franklin and Boyer

were Johnson's contentions that "Trial counsel did not cross-examine any witnesses or make any

mention about the DNA testing or ensure that the DNA from the tissue samples under Ms. Dowty's

fingernails and from the semen found in Ms. Dowty's vagina was proven to match Appellant's DNA";

and that "Trial counsel did not point out that the grand jury testimony of Sergeant Patterson differed

from his trial testimony.  Trial counsel did not thoroughly cross-examine Sergeant Patterson, nor did

she challenge his findings."  [Doc. 18, Ex. E, at 22].

        27.  The New Mexico Supreme Court reviewed these allegations and noted that Johnson's

numerous claims of ineffectiveness revolved around three issues: physical evidence and photographs,

cross-examination and presentation of witnesses, and trial venue.  [Doc. 18, Ex. H, at 13].  The first

two categories are pertinent to the ineffectiveness issue raised in Johnson's federal habeas petition,

in which he faults counsel for her handling of Patterson's testimony and the DNA evidence.

        28.  The state supreme court rejected Johnson's claims on appeal that counsel was ineffective

in failing to introduce into evidence the fact that the victim had tissue and blood under her fingernails

and semen in her vagina but that there was no testing done to determine if this material was from

---

[3]These cases stand for the proposition that "appointed counsel should set forth contentions urged
by a petitioner whether or not counsel feels they have merit and whether such contentions are in fact
argued by counsel" State v. Franklin, supra, 78 N.M. at 129.

Johnson.  Speaking of this evidence, as well as numerous other pieces of evidence which Johnson

argued should have been admitted, the court noted:

> We fail to see how the inclusion of any of this evidence could have
> assisted Defendant.  None of the proffered evidence would directly
> challenge the States' evidence.  Defendant never told police or argued
> at trial that anyone other than himself was with Dowty between the
> time of the party and the time of her death.  McFeely [the pathologist
> who performed the autopsy on Dowty] testified that the fatal injury
> was caused within an  hour or two of Dowty's death, and that Dowty
> could not have walked or danced with her injury . . . .  The cross-
> examination indicates a strategy to question the completeness of the
> State's evidence, and to argue that the sex between Dowty and
> Defendant was consensual.  This was a reasonable strategy given the
> amount of evidence presented against Defendant.

[Doc. 18, Ex. H, at 13-14].

29.  With respect to counsel's handling of the Patterson testimony, the state supreme court

also found no ineffective assistance of counsel:

> Regarding cross-examination and the presentation of witnesses,
> Defendant argues that he was denied a fair trial and that his trial
> counsel was ineffective because she did not subpoena witnesses, and
> did not cross-examine the State's witnesses.  The record shows that
> Defendant's trial counsel did cross-examine the State's witnesses.
> She gained admissions that questioned the completeness of the State's
> evidence.  She also gained admissions that Dowty's wounds, even the
> perforation of her vaginal wall, could have been the result of
> consensual sex [but the jury chose not to believe this] . . . .
>      On cross-examination . . . Defendant's trial counsel confronted
> Patterson with discrepancies between his grand jury testimony and
> trial testimony . . .

[Doc. 18, Ex. H, at 14-15].

30.  Johnson also raised these issues in his state habeas petition, wherein he argued that

counsel was ineffective in that she "failed to cross-examine any witness or make any mention about

the DNA testing (from samples taken under Ms. Dowty's fingernails and from the semen found in Ms.

Dowty's vagina) failing to match Appellant's DNA," and "failed to challenge Sgt. Patterson in regards to conflicting testimony between the grand jury and the trial . . . ." [Doc. 18, Ex. L, at 3, 4]. He raised these same issues in his petition for certiorari following denial of the request for habeas relief. [Doc. 18, Ex. O. at 4,5].   The state courts rejected Johnson's arguments on these issues.

31.   These rulings were not unreasonable.  As the state supreme court pointed out, Johnson never told police or argued at trial that anyone other than himself was with Dowty between the time of the party and the time of her death.  In addition, the fatal injury was caused within an hour or two of  death, and she could not have walked or danced, as several witnesses testified she did earlier in the evening of her death, with that sort of serious injury.  Johnson gave inconsistent versions of the events of that night at various times during police interviews, but he was consistent in stating that he was alone in the apartment with the victim between the time they had sex and the time he discovered her body in the morning.  If Johnson is arguing that DNA evidence might have shown that someone else had sexual relations with the victim and was responsible for the criminal sexual penetration that caused her death, there is absolutely nothing on the record to support this claim, and that argument is simply not consistent with Johnson's several statements to police, as the state supreme court points out.

32.  The Court finds that the ruling by the state court was neither contrary to nor involved an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented, and concludes that federal habeas relief should be denied with respect to this claim.

<u>Claim Two:  Criminal Sexual Penetration as Insufficient</u>
<u>Predicate Offense for Felony Murder</u>

33.  Johnson's final ground for federal habeas relief is his contention that first degree criminal sexual penetration is insufficient as a predicate felony for felony murder, "without conviction." Respondent seeks dismissal of this claim, on grounds that the determination as to which crimes are sufficiently serious to serve as predicates for felony murder is a question of purely state law, inappropriate for federal habeas relief.  The Court agrees with this statement.

34.  It appears, however, that Johnson is also arguing that the State failed to prove that he committed the predicate crime of criminal sexual penetration, in that there was no evidence  that he was the person who inflicted the violent penetration which caused the victim's death.  There certainly was no eyewitness testimony to the penetration, but the state supreme court found in Johnson's direct appeal that the jury could reasonably have reached the conclusion that Johnson was responsible, based on circumstantial evidence:

> For the conviction of felony murder, the State had to prove that Defendant committed CSP, that this act caused Dowty's death, and that he intended to kill or knew that his acts created a strong possibility of death or great bodily harm . . . .  Defendant argues that there was no evidence that he inserted a blunt object into Dowty, and that she herself may have done so.   The jury may rely on circumstantial evidence for its verdict, including its conclusion that Defendant inserted an object into Dowty's vagina.  <u>State v. Motes</u>, 118 N.M. 727, 729, 885 P.2d 648 (1994).  The evidence showed that only Defendant was with Dowty when she suffered the fatal injury. Someone put an object into her vagina with great force.  McFeely [the pathologist, who is a medical doctor] testified, in essence, that it was very unlikely that any person would consent to this, much less do it herself.  Her injury was severe enough that Dowty probably could not have walked after suffering it.  While Defendant argued that he did not know how she suffered the injury, there was evidence that he changed his story a number of times, and attempted to conceal evidence that Dowty bled.  There was sufficient evidence for the jury to conclude

that Defendant inserted an object into Dowty's vagina, causing her
death.

[]Doc. 18, Ex. H, at 8-9].

35.   The Court finds that this issue either presents a purely state law question, or that it was
decided and rejected in Johnson's direct appeal.  In either case, it is inappropriate for federal habeas
relief.  "It is not the province of a federal habeas court to reexamine state court determinations on
state law questions."  <u>Bowser v. Boggs</u>, 20 F.3d 1060, 1065 (10th Cir. 1994).  Nor do federal habeas
courts "sit to correct errors of fact or to relitigate state court trials. Our jurisdiction is limited to
ensuring that individuals are not imprisoned in violation of the Constitution."  <u>Thompson v.
Oklahoma</u>, 202 F. 3d 283 (Table, text in Westlaw), 2000 WL 14404, at *6 (10th Cir. Jan. 10, 2000);
<u>Scrivner v. Tansy</u>, 68 F. 3d 1234, 1238 (10th Cir. 1995).  The Court finds no constitutional violation
in Johnson's conviction.

## **Recommended Disposition**

That Respondent's Motion to Dismiss [Doc. 16] be granted, and that the Petitioner Timothy
Johnson's petition be denied and the case dismissed with prejudice.


Lorenzo F. Garcia
Chief United States Magistrate Judge